supposed it to contain. But he sold it for a lump sum and not by the acre. He practiced no deceit, and made no misrepresentation as to the number of acres. On the contrary, his letter of Dec. 29, 1882, to the plaintiff, expressly states that he does not know the quantity of land, and he furnishes him with a description thereof by metes and bounds as contained in his deed. The said deed described the tract as containing 213 acres, more or less. He then states : " I named the price, viz. : $4,000, that the tract must bring me, regardless of the number of acres it contains, and if you desire it at that price you can have it, but would just as soon hold it."

Nor does it appear that the plaintiffs were injured by the admitted shortage. They bought it for the timber and bark and not for the land itself. Before purchasing, they had an estimate made of the timber and bark, and the case shows that they obtained from the tract the full amount of the estimate.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.

## Elmer to use of Harris, Appellant, *v.* Hall.

*Partnership—Settlement of firm accounts—Assumpsit.*

A settlement of partnership accounts cannot be brought about in an action of assumpsit, unless the partnership was for a single transaction, or all partnership matters have been settled and a balance determined to be due.

*Foreign executrix—Assignment of claim under New York law—Recognition of assignment by a Pennsylvania court.*

While a foreign executrix, having taken no letters in Pennsylvania, could not sue here, nor transfer the right to sue to any one else, it was held by the court below that an assignment by a New York executrix of a claim of her testator against a party domiciled in New York, could be assigned under the law of that state, and that this assignment would be recognized to enable the assignee to maintain a suit in a Pennsylvania court. Per SITTSER, P. J.

Argued March 17, 1892. Appeal, No. 285, Jan. T., 1892, by plaintiff, Sarah F. Elmer, executrix of R. A. Elmer to use of F. K. Harris, from judgment of C. P. Bradford Co., May T., 1890, No. 961, refusing to take off nonsuit entered on motion of S. C. Hall, defendant. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Assumpsit to recover a portion of a fund alleged to have been collected on partnership account.

On the trial before SITTSER, P. J., specially presiding, it appeared that prior to 1887, the firm of Baird & Co., composed of N. C. Harris, R. A. Elmer, J. C. Baird and S. C. Hall, was in the harness business. The firm was unsuccessful and was dissolved in the year named. Elmer withdrew to New York, where he died, and letters testamentary upon his estate were granted to his widow. At the time of the dissolution, the firm was indebted to the First National Bank of Athens, and the amount of the debt was then liquidated. Afterward, S. C. Hall, in the name of the firm, sued the bank for usurious interest paid, and recovered a certain sum of money. Sarah F. Elmer, executrix, assigned to F. K. Harris her claim on behalf of her testator against this fund. Harris began this suit by a summons, which was served upon Hall while temporarily in Pennsylvania.

At the conclusion of the plaintiff's case, the court, on motion, entered a compulsory nonsuit, and subsequently declined to take off the same in an opinion by SITTSER, P. J., which was, in part, as follows:

"This action was brought to recover $\frac{3}{16}$ of a sum of money collected by the firm of Baird & Co., (composed of N. C. Harris, R. A. Elmer, J. C. Baird and S. C. Hall,) from the National Bank at Athens. This firm was dissolved 1887. They conducted a pad factory in the borough of Athens. It seems the firm had occasion to borrow money of the bank at Athens, and about May 18, 1887, the time of the dissolution, paid what they owed the bank. Afterwards S. C. Hall, in the name of the firm, sued the bank for usurious interest and recovered a certain sum of money. This suit was brought to recover R. A. Elmer's share of it.

"R. A. Elmer removed to Yonkers, in the state of New York, and died there. Letters were taken in that state by his widow. She assigned this claim to F. K. Harris, who caused a summons to be served upon Hall while temporarily in Pennsylvania.

"In granting the nonsuit we relied chiefly on the objection that the widow having taken no letters in Pennsylvania could not sue here, and could not transfer the right to anyone else to

sue here.  We understood at the time that Hall was a resident of Pennsylvania.  On the argument of the rule to take off the nonsuit it appeared that Hall had his domicile in the state of New York at the time of the service upon him and at the time of the transfer of the claim from the administratrix of R. A. Elmer to F. K. Harris.

" On the trial a statute of the state of New York was given in evidence, which enables the assignee of a claim to sue in his own name as the legal plaintiff.  This act would not enable the assignee to sue for and recover any portion of the estate of the deceased in Pennsylvania.

" The act of March 15, 1832, P. L. 136, Purd. 509–13 provides that letters granted out of this commonwealth shall not confer any of the powers possessed by an executor or administrator under letters granted in Pennsylvania.  See Sayre's Ex'rs v. Helme's Ex'rs, 61 Pa. 299.  This act cannot interfere with the administration of the estate in New York.  By the letters there granted the administrator had undoubted power to pass the title to this claim to F. K. Harris.  This she could not have done if S. C. Hall had resided in Pennsylvania.  She had no control over the assets of the estate in Pennsylvania, but she could dispose of such as were in the state of New York, and as Hall resided there at the time of the assignment to Harris, we must give due effect to the laws of that state operating upon property within its limits.  F. K. Harris thus becoming the legal holder of the claim, with power to sue in his own name, had the right to collect the debt anywhere he could get service on the defendant.  The question seems to be governed by the principle of Moore v. Fields, 42 Pa. 467.

" Another ground for the nonsuit was that the action should have been account and not assumpsit.  Unless there has been a settlement of the partnership accounts and a balance struck, assumpsit cannot be maintained by one partner against another, unless, indeed, it be a partnership in one single transaction : Knerr v. Hoffman, 65 Pa. 126.  Ozeas v. Johnson, 1 Binn. 191 : 'No case has been cited by the plaintiff's counsel to show that an action like the present can be maintained unless the partners have settled their account and struck the balance.' "

He then cited Andrews v. Allen, 9 S. & R. 240 ; Galbreath v. Moore, 2 Watts, 86 ; Brubaker v. Robinson, 3 P. & W. 295 ;

Gillis v. McKinney, 6 W. & S. 78, and Wright v. Cumpsty, 41 Pa. 102, and continued:

" An examination of these cases and the reasons upon which they are founded will show that it is where the whole scope of the partnership embraces only a single transaction that the rule requiring account render is dispensed with and assumpsit permitted. It seems hardly necessary to say that the cases do not permit one partner to select a single transaction from the multitude embraced in the business of the firm and recover upon it in assumpsit, because the item sued for is a single transaction.

" [The plaintiff sues for $\frac{3}{16}$ of the amount recovered and received by the defendant. Whether the plaintiff is entitled to receive that amount depends upon a full settlement of the partnership accounts. There is no proof that such settlement has been had. Suppose the defendant should offer to show that the plaintiff had received more than his share of the firm property, so that he was not entitled to any portion of the amount sued for. The court would be bound to reject such an offer, because in an action of assumpsit we cannot take an account between partners involving a multitude of transactions.] [3] McFadden v. Hunt, 5 W. & S. 468; Klase v. Bright, 71 Pa. 186.

" And yet, unless we can entertain such an offer, we cannot do justice between these parties. [In point of fact the amount coming to the plaintiff is what shall be due him from the defendant on a final adjustment of the affairs of the firm. The evidence introduced on the part of the plaintiff was nothing but an attempt to show the balance due the plaintiff from the defendant on a full account.] [4, 7] [This is done by showing by Mr. Harris that at the time of the payment of certain notes at the bank there was nothing to settle.] [5] [The usurious interest afterwards collected back from the bank forming the only subsequent transaction, it follows that $\frac{3}{16}$ of it is the amount which would be due from defendant to plaintiff on a final adjustment of the accounts between these partners.] [6] The plaintiff having thus concisely shown the balance which should be due him upon final settlement, the door is open to the defendant to go into the same matter and show if he can that such is not the balance, and to that end

produce the books and investigate all the affairs of the firm. The assertion by Mr. Harris that there was nothing to settle was itself a sweeping investigation of the affairs of the firm. It goes over all the accounts of the partners and pronounces them equal in a breath; for if they were not equal there would be something to settle. We have already shown that such an investigation cannot be made in the action of assumpsit either by the plaintiff or defendant.

"We therefore decline to take off the nonsuit entered in this case."

Plaintiff appealed.

*Errors assigned* were, (1) entry of compulsory nonsuit and (2) failure to take it off; (3–7) the opinion of the court in refusing to take off the judgment and also the portions of the opinion in brackets, quoting them, on the ground that they showed a misapprehension of facts.

*H. F. Maynard, E. Overton* with him, for appellant.

*D'A. Overton* and *John C. Ingham,* for appellee, not heard.

PER CURIAM, March 28, 1892.
Judgment affirmed.

## Weiss *v.* American Fire Insurance Co., Appellant.

148 349
199 53

148 349
22 SC *505

148 349
211 *272

148 349
40SC*298

*Fire insurance—Policy — Condition against incumbrances—Condition against foreclosure.*

A condition in a policy that the assured shall not "incumber the property without the consent of the company indorsed hereon," is not broken by the fact that the insured allowed judgments to be entered against him, which became liens on the property insured, provided the total amount of incumbrance is no greater than when the insurance was effected.

A condition that if any change take place in the title of the property, "or if foreclosure suit shall have been or be hereafter begun, or the title or possession be now or hereafter become in any way involved in litigation," the policy shall be void, is not broken by the issue of a scire facias sur mortgage. The scire facias is not a technical foreclosure within the meaning of the policy, nor is it a violation of its spirit, since there has been no alienation of title or change of possession and increased risk.

*Proofs of loss—Failure to furnish within time specified—Waiver.*

Where a policy required that proofs of loss should be furnished within thirty days from the date of the fire, and a total loss occurred, of which